IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CALVIN LEWIS, | |
| Movant, | CIVIL ACTION NO.: 2:18-cv-104 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:16-cr-12) |
| Respondent. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Movant Calvin Lewis ("Lewis"), who is currently housed at the Federal Correctional Institution in Estill, South Carolina, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. Doc. 1. The Government filed a Response. Doc. 6. For the reasons which follow, I **RECOMMEND** the Court **DENY** Lewis' § 2255 Motion, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Lewis *in forma pauperis* status on appeal and a Certificate of Appealability. I also **DENY** Lewis' request for an evidentiary hearing. Doc. 1-1 at 16.

BACKGROUND

Lewis was charged and indicted with 18 co-defendants in a 30-count indictment with conspiracy to possess with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 846 (count 1); conspiracy to use, carry, or possess firearms, in violation of 18 U.S.C. § 924(o) (count 2); and five counts of possession of cocaine base ("crack") with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (counts 10, 11, 13, 15, and 28). United States v. Lewis, 2:16-cr-12 ("Crim. Case"), Doc. 3. Lewis' appointed attorney, Garret W. Meader, filed several pre-

trial motions on Lewis' behalf.  Crim. Case, Docs. 370–74, 376–83.  Lewis and Mr. Meader were able to negotiate an agreement by which Lewis agreed to plead guilty to the conspiracy to possess with intent to distribute controlled substances, including 500 grams or more of cocaine and 280 grams or more of cocaine base (crack) (count 1) count.  Crim. Case, Doc. 661.  In exchange, the Government agreed to: not object to a recommendation Lewis receive a three-level reduction for acceptance of responsibility, if made; not file a 21 U.S.C. § 851 enhancement, if applicable; move the Court to dismiss the remaining counts against Lewis; not recommend a sentence greater than 25 years' imprisonment, if Lewis complied with the terms of his plea agreement; and file a U.S.S.G. § 5K1.1 or Rule 35 motion for sentence reduction, if applicable.  Id. at 2–3.

The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing but stopped the hearing after Lewis stated he heard voices, indicating he might not be competent.  Crim. Case, Doc. 341; Doc. 893 at 2.  Judge Wood ordered Lewis be sent to a federal facility for a psychological evaluation.  Crim. Case, Doc. 893 at 2–3; Doc. 341.  After receipt and review of Lewis' psychological report, Crim. Case, doc. 550, the Court determined Lewis was capable of understanding the charges against him and meaningfully consulting with his attorney and found Lewis was competent to stand trial.  Crim. Case, Docs. 584, 613.

Judge Wood then resumed Lewis' sentencing hearing, noting Lewis was diagnosed with malingering, or "gross exaggeration or fabrication of psychological symptoms to avoid a legal consequence."  Crim. Case, Doc. 893 at 3.  During the plea hearing, Brunswick Police Department Detective Michael Sapp provided the factual basis for the plea, Lewis admitted to the truth of Sapp's testimony, Judge Wood accepted Lewis' plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 20–

25. Judge Wood then sentenced Lewis to 300 months' imprisonment. Crim. Case, Docs. 803, 892.

Lewis has now filed a § 2255 Motion to challenge his sentence and conviction. Doc. 1. The Government filed a Response. Doc. 6.

**DISCUSSION**

**I.    Whether Counsel Rendered Ineffective Assistance**

Lewis raises claims of ineffective assistance of counsel during the criminal proceedings against him. Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). This right also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014)

(quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that [he] was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

### A. Counsel's Failure to Explain "Relevant Conduct" Provisions of the Guidelines

Lewis avers Mr. Meader rendered ineffective assistance during the sentencing phase of his criminal proceedings because Mr. Meader did not advise him regarding relevant conduct and that he would be held responsible for uncharged drug quantities. Doc. 1-1 at 6. Lewis asserts the Court relied on testimony and evidence from cooperating co-defendants in determining his total offense level under the Guidelines. Id.

"Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Jokhoo, 806 F.3d 1137, 1141 (8th Cir. 2015) (quoting United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005)). A court considering relevant conduct "must consider 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully cause by the defendant.'" United States v. Tillman, 2:17-CR-8, 2017 WL 2728209, at *3 (S.D. Ga. June 23, 2017) (quoting U.S.S.G. § 1B1.3(a)(1)(A)). In addition, the base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common

scheme or plan as the offense of conviction[.]" Id. (quoting U.S.S.G. § 1B1.3(a)(2)).  "Courts have consistently held . . . conduct forming the basis of counts . . . dismissed from the indictment pursuant to a plea agreement[] is relevant conduct for sentencing."  McReed v. United States, Nos. CV113-121, CR 111-302, 2014 WL 1238037, at *8, n.4 (S.D. Ga. Mar. 21, 2014) (citing United States v. Watts, 519 U.S. 148, 149–53 (1997) (holding sentencing court may consider facts relating to other charges, even ones of which defendant has been acquitted); United States v. Kennedy, 326 F. App'x 509, 511 (11th Cir. 2009) (Relevant conduct for sentencing included quantities of drugs that were subject of dismissed counts of indictment.); and United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("[A] sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts.")).

Under the Guidelines, the Court was to consider all of Lewis' relevant conduct, even the dismissed counts of conspiracy to use, carry, and brandish firearms and possession of cocaine base with intent to distribute.  In addition, the plea agreement Lewis and the Government reached informed him the Guidelines calculation would take into account all of his relevant conduct, not just the facts underlying the count to which he was pleading guilty.  Crim. Case, Doc. 661 at 7.  What is more, Lewis stated at the Rule 11 hearing he understood the Court could impose a sentence upon him up to the statutory maximum, which was life imprisonment.  Crim. Case, Doc. 892 at 4.  Thus, the Court correctly included the conduct underlying the dismissed counts in assessing a proper sentence for Lewis.  His contention to the contrary—benched as an ineffective assistance of counsel claim—is without merit, as Lewis cannot meet either prong of the Strickland standard.  The Court should **DENY** this portion of Lewis' Motion.

### B. Counsel's Alleged Failure to Ensure There was a Factual Basis for the Plea

Lewis also argues Mr. Meader was ineffective for failing to ensure there was a factual basis for his guilty plea. Doc. 1-1 at 7. The Government argues Lewis' claim is without merit and should be denied without a hearing. Doc. 6 at 17.

Lewis and Mr. Meader were able to negotiate a plea agreement with the Government whereby Lewis agreed to plead guilty to the charge of conspiracy to possess with intent to distribute controlled substances, including 500 grams or more of cocaine and 280 grams or more of cocaine base (crack) (count 1). Crim. Case, Docs. 660, 661  In exchange, the Government agreed to: not object to a recommendation that Lewis receive a three-level reduction for acceptance of responsibility, if made; not file a 21 U.S.C. § 851 enhancement, if applicable; move the Court to dismiss the remaining counts against Lewis; file a § 5K1.1 or Rule 35 motion for sentencing reduction, if applicable; and not recommend a sentence greater than 25 years' imprisonment. Crim. Case, Doc. 661 at 2–3. The plea agreement set forth the statutory elements and factual basis of the offense to which Lewis was pleading guilty. Id. at 4–5. Lewis agreed he was guilty of the offense. Id. at 5. In addition, Lewis affirmed he had read and reviewed the agreement with his attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 14.

Lewis appeared before Judge Wood for his Rule 11 proceeding. Crim. Case, Doc. 893. Judge Wood addressed Lewis and explained the purpose of the hearing was to ensure he understood the case that was pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Meader, pleading guilty was what Lewis wanted to do. Id. at 3. Judge Wood inquired whether anyone had made, leaned on, or pushed Lewis to offer to plead guilty,

7

and he said no one had done so and that pleading guilty was what he wanted to do. Id. at 4. Judge Wood told Lewis he did not have to plead guilty. Id. at 6–7. Judge Wood also told Lewis, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. Id. However, Judge Wood cautioned Lewis he would be waiving these rights if he pleaded guilty and she accepted that guilty plea. Id. at 8. Lewis stated he understood. Id. Lewis also stated he and Mr. Meader had an opportunity to talk about the facts and the law pertaining to his case, including the indictment, as well as about the proposed plea agreement. Id. at 8. Lewis stated Mr. Meader had spoken with him in general terms about the Sentencing Guidelines and affirmed he was satisfied with Mr. Meader's representation and had no complaints whatsoever. Id. at 8–9.

Judge Wood reviewed the indictment with Lewis, the essential elements of the crime to which he was pleading guilty and the other counts of the indictment naming him, and that the Government would have to prove those essential elements. Id. at 9–11. Judge Wood asked Lewis if he was familiar with the counts, whether he and Mr. Meader went over the counts at length, and if he had read and reviewed the indictment; he responded "yes" to each question. Id. at 11. He stated he had no questions. Id. at 12. Judge Wood advised Lewis that to convict him of count 1 of the indictment, the Government would have to prove beyond a reasonable doubt the three essential elements of the conspiracy: (1) two or more people agreed in some way to "accomplish a shared and unlawful plan to possess 500 grams or more of cocaine and 280 grams or more of cocaine base," Schedule II controlled substances; (2) Lewis knew the unlawful purpose of the plan and willfully joined it; and (3) the object of the unlawful plan was to possess

with intent to distribute 500 grams or more of cocaine and 280 grams of cocaine base (crack). Id. at 11.  By pleading guilty, Judge Wood noted Lewis was admitting the essential elements of the crime to which he intended to plead guilty were satisfied.  Id.  Judge Wood advised Lewis of the maximum sentence she could impose, which was not less than 10 years nor more than life in prison.  Id. at 11–12.  Moreover, Judge Wood explained to Lewis, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553 but his sentence carried a mandatory minimum of at least 10 years' imprisonment.  Id. at 12–13.  Lewis stated he understood and had no questions.  Id. at 13, 14.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Tania Groover stated the material provisions were:

> This Defendant agrees to plead guilty to Count 1 of the indictment.  He agrees to acknowledge at the time of the plea the truth of the factual basis that is contained within the plea agreement.
>
> He agrees to waive all other rights to request information about the investigation and prosecution of his case under the Freedom of Information Act and the Privacy Act.  He waives the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.  If he fails to plead guilty or later withdraws his guilty plea, all statements made by him in connection with the plea and/or all leads derived therefrom would be admissible for any and all purposes.
>
> He agrees to pay on the date of sentencing any special assessments imposed by [t]he Court and agrees to the forfeiture as outlined in the indictment.  However, we noted previously, we're not seeking forfeiture as to this Defendant.
>
> He waives his right to appeal on certain grounds and waives his right to collaterally attack as outlined in the plea agreement.
>
> The Government agrees to not object to a recommendation from the probation office that the Defendant receive a full three-level reduction for acceptance of responsibility if the recommendation is made.

> The Government agrees to not file a Title 21 U.S.C. Section 851 enhancement if applicable and agrees to move to dismiss the Defendant from the remaining counts of the indictment at sentencing.

Id. at 14–16.  Judge Wood asked Lewis if AUSA Groover's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 17.  Lewis also stated he read the plea agreement before he signed it and Mr. Meader answered any questions he may have had.  Id.  Lewis affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.

Judge Wood then asked Lewis whether he wished to still plead guilty to count 1 of the indictment because he was in fact guilty of that count, and he answered in the affirmative.  Id. at 18–19.  Judge Wood also asked Lewis whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id. at 10.  Judge Wood determined Lewis' offer to plead guilty was "knowing" and "voluntary."  Id. at 20.  Lewis agreed.  Id.

The Government provided a factual basis for Lewis' plea of guilty by calling Brunswick Police Department Detective Michael Sapp to testify.  Id.  Detective Sapp testified he was one of the lead investigators of the investigation into Lewis and the other people outlined in the indictment.  Id. at 20–21.  Detective Sapp stated law enforcement officials used Court-authorized wiretaps, multiple search warrants, administrative and grand jury subpoenas, physical, electronic, and aerial surveillance, controlled buys, and multiple informants to dismantle the organization.  Id. at 21.  Detective Sapp also stated Lewis was a member of a conspiracy operating in the Southern District of Georgia which received quantities of cocaine from one co-defendant (Romia Daniels), which were then cooked down by Lewis into crack, and Lewis distributed more than 280 grams of crack cocaine and more than 500 grams of powder cocaine.  Id. at 22–23.  In addition, the investigation revealed Lewis as the leader of the Bloods gang in Brunswick.  Id. at

22. Investigators used confidential informants to make a "number of controlled buys" from Lewis. Id. at 21. This investigation revealed Lewis coordinated the distribution of crack out of his home and members of the conspiracy carried firearms in furtherance of the drug crimes. Id. at 21. Additionally, surveillance revealed daily gang activity at Lewis' house. Id. at 23. Finally, Detective Sapp testified Lewis admitted selling or purchasing an ounce to an ounce and a half of powder cocaine two to three times a week and cooking that down into crack for distribution. Id. at 24. Lewis did not dispute any of the testimony given by Detective Sapp. Id.

    Judge Wood informed Lewis at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Lewis wanted to do after consultation with his attorney. Id. at 3. After telling Lewis he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Lewis averred no one was forcing him to plead guilty and that pleading guilty was what he wanted to do. Id. at 4. Judge Wood discussed the specific rights Lewis was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Lewis he would waive those rights if he pleaded guilty and she accepted his plea. Id. at 7–8. Lewis stated he had spoken with Mr. Meader about the facts and law of his case, including the plea agreement and indictment. Id. at 8–9, 14. Lewis verified AUSA Groover's summary of the plea agreement was consistent with the plea he had signed. Id. at 17. Judge Wood asked Lewis whether he wanted to plead guilty because he was, in fact, guilty of count 1 of the indictment, and he answered in the affirmative. Lewis declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Judge Wood determined Lewis' guilty plea was knowing and voluntary. Id. at 19–20. Detective Sapp then provided a factual basis for Lewis' plea, and Lewis agreed with the Government's

factual basis. Id. at 24. Judge Wood accepted Lewis' plea and adjudged him guilty of conspiracy of possession with intent to distribute cocaine and cocaine base. Id. at 24. In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing. Lambert, 777 F. App'x at 339.

Lewis' claim that Mr. Meader was ineffective for failing to object to the guilty plea because there was no factual basis and that, had it not been for Mr. Meader's ineffective assistance, he would not have pleaded guilty, is disproven by the record and is wholly without merit. First, Lewis agreed to a sufficient factual basis in his plea agreement and agreed to facts in the plea agreement that established the elements of the offense. Second, the Government established a sufficient factual basis for the plea hearing through the testimony of Detective Sapp. Moreover, Lewis agreed with Detective Sapp's testimony. Crim. Case, Doc. 893 at 24. Finally, the Court found there was a factual basis for the plea of guilty to count 1 of the indictment and accepted Lewis' guilty plea.

Nevertheless, Lewis argues Sapp's testimony merely establishes Lewis was involved in a buyer-seller relationship rather than a conspiracy. Doc. 1-1 at 10. Specifically, Lewis argues Detective Sapp's testimony never established a continuing relationship between Lewis and Noble which resulted in repeated transactions. However, Detective Sapp testified Lewis admitted to purchasing between an ounce and an ounce and a half of powder cocaine multiple times a week, establishing a continuing relationship sufficient to indicate a conspiracy. Doc. 892 at 23.

Moreover, if Lewis had not entered a plea agreement, proceeded to trial on all counts of the indictment, and been convicted of those counts, he would have faced a minimum of 69 years

and up to life in prison.[1]  Crim. Case, Doc. 3.  Because Lewis pleaded guilty, his Guidelines sentencing range was 262 to 327 months' imprisonment, a range significantly less than what he likely would have faced by statute had he not pleaded guilty and received a three-point level reduction for acceptance of responsibility.  The record before the Court, including the statements Lewis rendered under oath and under penalty of perjury, contradicts Lewis' claims relating to Mr. Meader's assistance and whether his plea had a sufficient factual basis.  Further, Lewis has not shown that not accepting the plea would have been rational under the circumstances, Martinez, 684 F. App'x at 922, and instead offers only conclusory allegations in this regard.  Lewis is not entitled to his requested relief, and the Court should **DENY** this portion of his Motion.

## II. Failure to File Recusal or Disqualification Affidavit[2]

Lewis contends Mr. Meader was aware Lewis was a litigant in a civil action in this Court concerning law enforcement officials' alleged Fourth Amendment violations, and Judges Wood and Baker presided over this civil case.  Doc. 1-1 at 13.  Lewis asserts Judge Wood entered orders and held hearings in this civil action.  Id.  The day after this civil action settled, a grand jury convened and returned an indictment against Lewis, his wife, other family members, and others charging conspiracy.  Id. at 14.  Lewis maintains Mr. Meader should have moved for Judges Wood and Baker to recuse themselves because they were privy to the details of his civil

---

[1]   The Court recognizes the applicable standard is not whether the result of a trial would have been different than entering a plea.  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017).  The Court notes this merely as illustrative of the reasonableness of Lewis' acceptance of a plea agreement.

[2]   Lewis asserts Mr. Meader was ineffective for failing to file an affidavit detailing Judge Wood and former Magistrate Judge Baker's bias or prejudice against him, doc. 1-1 at 11–16, likely in an attempt to work around his collateral attack waiver contained in his plea agreement.  Crim. Case, Doc. 661.  The Court addresses this assertion as a separate enumeration of error, but, even if the Court were to construe this allegation as an ineffective assistance claim, Lewis fails to show prejudice and does not satisfy either prong of Strickland.

action. Id. at 13. In addition, Lewis states Judge Wood and Judge Baker knew Lewis' wife and son were also indicted, which shows the Court was biased. Id. at 14.

Recusal is governed by 28 U.S.C. §§ 144 and 455. Jones v. Commonwealth Land Title Ins. Co., 459 F. App'x 808, 810 (11th Cir. 2012). Under § 144, a judge must recuse herself or himself when a party to a district court proceeding "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144. "To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000). Under § 455(a), a judge must disqualify herself or himself if her or his "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) requires recusal where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). Any doubts must be resolved in favor of recusal. United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989).

Regarding recusal under § 144, Lewis does not provide an affidavit and fails to plausibly allege judicial bias against him; rather, Lewis' contentions are nothing more than baseless assertions that, because Judge Wood and Judge Baker presided over a civil action that is not related to Lewis' criminal proceedings, these judges improperly gained knowledge about Lewis' criminal prosecution. The proceedings in Civil Action 2:14-cv-122 arose as a result of Lewis' and Melvina Lewis' claims that City of Brunswick Police officers illegally searched their residence without a warrant in 2012. Compl., Lewis v. City of Brunswick, 2:14-cv-122 (S.D. Ga. Aug. 15, 2014), ECF No. 1. Lewis has not shown any connection between this civil action

14

and the criminal proceedings against him, other than he and his wife were the plaintiffs in the civil action and the residence involved in that civil case is one of the same residences involved in the criminal proceedings. Lewis fails to show Judge Wood or former Magistrate Judge Baker acted improperly in either case. See United States v. Grinnell Corp., 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his [or her] participation in the case.")

Similarly, recusal under § 455 is not warranted. Disqualification "may not be predicated on the judge's rulings in the instant case or in related cases." Deems v. Comm'r of IRS, 426 F. App'x 839, 843 (11th Cir. 2011) (citing Phillips v. Joint Legis. Comm. on Performance & Expenditure Review of the State of Miss., 637 F.2d 1014, 1020 (5th Cir. 1981)).

Because Lewis has not put forth any evidence raising reasonable doubts as to the assigned judges' impartiality, recusal is not warranted in this case. Thus, the Court **DENIES** Lewis' claim.

### III. Evidentiary Hearing Request

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a movant is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in

the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004). Because Lewis' claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary. Consequently, the Court **DENIES** Lewis' request for an evidentiary hearing.

IV.     **Leave to Appeal *in Forma Pauperis* and Certificate of Appealability**

The Court should also deny Lewis leave to appeal *in forma pauperis*. Though Lewis has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

16

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Lewis' Motion and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Lewis a Certificate of Appealability, Lewis is advised he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there

are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Lewis' § 2255 Motion, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Lewis *in forma pauperis* status on appeal and a Certificate of Appealability. I also **DENY** Lewis' request for an evidentiary hearing. Doc. 1-1 at 16.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Motion or any other filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 27th day of July, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA